[No. G024413. Fourth Dist., Div. Three. Aug. 6, 1999.]

In re ERIC A., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
EDWARD A., Defendant and Appellant;
JANEAN M., Defendant and Respondent.

**COUNSEL**

Marjorie G. Fuller for Defendant and Appellant.

Laurence M. Watson, County Counsel, and Wanda S. Florence, Deputy County Counsel, for Plaintiff and Respondent.

Sharon L. Grier for Defendant and Respondent.

Harold F. LaFlamme and Craig E. Arthur, under appointments by the Court of Appeal, for Minor.

## OPINION

**BEDSWORTH, J.**—After Eric testified his father, Edward, had been sexually molesting him, the juvenile court declared Eric a dependent child and stripped Edward of custody. Edward appeals from that order and contends the court erred by concluding his son, who is afflicted with Down's syndrome, was competent to testify. Specifically, he complains insufficient evidence was adduced to demonstrate Eric understands the difference between truth and prevarication. Edward also insists the court abused its discretion by not appointing an expert to help it determine the boy's competence to testify, and by admitting Eric's hearsay statements into evidence.

Eric counters with a motion to dismiss the appeal, arguing that the matter is moot because, at a six-month review hearing, Edward stipulated the juvenile court's initial assumption of jurisdiction was justified. We agree with Eric and consequently dismiss the appeal.

A child of divorced parents, Eric lived with his mother and stayed with his father on Wednesday nights and during occasional weekends. A few months before his ninth birthday, Eric told his mother and other family members his father had been "kiss[ing] and play[ing] with [his] privates" during Wednesday night visitations. Although his mother did not want to believe Eric at first, his persistence finally convinced her, and she eventually contacted personnel from the Orange County Social Services Agency, who took Eric into protective custody.

Eric, though affected by Down's syndrome, is an alert "full inclusion student" at a local elementary school. While his motor skills have been assessed as "significantly delayed," he functions adequately in school with the help of an instructional assistant. His school psychologist reports he "has appropriate voice and fluency skills," "responds very well to auditory input, . . . has a wonderful sense of humor and a good memory," despite the challenges he faces as a consequence of his condition.

When Eric was called to testify at the dependency hearing and asked whether he "[c]ould promise when all these people ask you questions [that]

you'll tell them the truth," he answered, "Yes." When a deputy county counsel asked him, "Do you know the difference between the truth and a lie?" Eric replied, "Yeah, I know what a truth and a lie is." Demonstrating his familiarity with the works of Walt Disney, he opined that when one lies, "your nose grows," and he acknowledged that one who fails to tell the truth will probably get into trouble. He also explained that to tell the truth "means not to tell a lie," and he identified lying as "a bad thing."[1]

At the close of Eric's testimony, which clearly detailed his father's abuse, the court asked him, "Did somebody tell you to say bad things about your Dad?" Eric answered, "No." He gave the same answer when asked specifically whether his mother or his "Nana" had said anything to him that might have influenced his testimony. All he was told, he said, was "just to say the truth."[2] ▬▬ Based on Eric's responses, the court concluded Eric knew the difference between a truth and a lie and was competent to testify.[3]

When Edward's counsel insisted the court allow him to present expert testimony to help assess Eric's ability to tell the truth, the court refused,

---

[1]While Edward's appellate counsel indicated at oral argument she was unaware of these two statements, they were elicited during a videotaped interview of Eric by a child abuse services team (CAST) social worker, which was admitted in evidence and considered by the court.

[2]Edward's counsel insists Eric demonstrated his inability to tell the difference between the truth and a lie by making bizarre and hyperbolic statements. Specifically, she contends Eric told a social worker his father had molested him "almost one million thirty one times," stated his dog died of emphysema as a result of smoking, and accused his father of scalding his genitals with boiling water. While it is obvious Eric exaggerated the number of incidents of molestation, the record does not support counsel's other representations.

Although Eric's mother told a social worker she had heard Eric told a teacher that his dog was a smoker, the record fails to include any other indication Eric ever made the statement. In fact, during the disposition hearing, Edward's trial counsel asked Eric, "Your dog smokes cigarettes; right?" Eric's answer was "No." Counsel continued, "Did you say your dog smokes cigarettes?" Answer: "No." Question: "Did he die of emphysema?" Answer: "Not —my . . . Dad's [father], he smoked. . . . [His name was] Sam."

Likewise, Eric was asked, "Did you ever tell anyone that your Daddy pours boiling or hot water on your privates?" Eric replied, "No." The deputy county counsel then objected: "Again assumes facts not in evidence." The court ruled, "Sustained. And I'll strike the answer. You know, we have a hard enough time on relevant stuff here." When Edward's attorney protested, "It's right here, Your Honor," the court replied, "Not in evidence." This is hardly the record depicted at oral argument.

[3]We note that even if Eric had been found incompetent to testify at the hearing, the statements he made to the social worker during the videotaped CAST interview about his father's abuse demonstrate, under trustworthy circumstances, that he understood the difference between the truth and a lie. Thus, his out-of-court statements were admissible and relevant to prove the allegations in the petition. (See *In re Cindy L.* (1997) 17 Cal.4th 15, 31-36 [69 Cal.Rptr.2d 803, 947 P.2d 1340] [under the "child dependency exception" to the hearsay rule, a finding of incompetency at the dependency hearing does not necessarily render a minor's out-of-court statements unreliable and inadmissible in evidence]; accord, *People* v. *Brodit* (1998) 61 Cal.App.4th 1312, 1330 [72 Cal.Rptr.2d 154].)

explaining it was the court's job to decide whether Eric was credible and competent to testify, and the court did not require the input of an expert to accomplish its task. Further, when counsel requested the court order an examination of the minor under Evidence Code section 730, it denied the request, remarking it saw no need to make such an order.[4]

## DISCUSSION

Eric asks that we dismiss the appeal, asserting that the matter is moot because, at a six-month review hearing, Edward's attorney stipulated "pursuant to Section 364 (c) . . . [that] conditions still exist which would justify initial assumption of jurisdiction under Sec. 300 [of the Welfare and Institutions Code]." Edward opposes the motion, invoking our decision in *In re Jennifer V.* (1988) 197 Cal.App.3d 1206 [243 Cal.Rptr. 441].

In *Jennifer V.*, the parties filed a form stipulation, as here, but checked the preprinted box which read: "Pursuant to Sec. 361(B)(1)(4) of the W & I Code, to vest custody with parents would be detrimental to the minor . . . ." (*In re Jennifer V., supra*, 197 Cal.App.3d at p. 1209.) We concluded, "[W]e cannot find [the father] waived his right to challenge the jurisdictional findings" of the juvenile court by his mere accession to subsequent disposition orders. (*Id.* at p. 1210; accord, *In re Christie D.* (1988) 206 Cal.App.3d 469, 475 [253 Cal.Rptr. 619].) We explained, "[A] parent should be able to accede to a dispositional order and so facilitate family reunification—a principal goal of the dependency case—without waiving the right to challenge the underlying order establishing court jurisdiction over the child in the first place. Only in the event of an unambiguous stipulation to the jurisdictional findings would we find a waiver of that right. [Citation.]" (*In re Jennifer V., supra*, 197 Cal.App.3d at p. 1209.)

Here, we have more than a mere accession to a disposition order. On behalf of his client, Edward's counsel not only agreed that placing custody with his client would be detrimental to the minor, he specifically acknowledged that "conditions *still* exist which would justify *initial assumption of jurisdiction* under [Welfare and Institutions Code section] 300." (Italics added.) In plain English, that means at the time of the six-month review, Edward conceded the allegations in the petition were true. By agreeing that

---

[4]Of course, the trial court is never obliged to appoint an expert to assist it in making a factual, much less a legal, determination under Evidence Code section 730 unless, as that section provides, "*it appears to the court . . . that expert evidence is . . . required.*" (Italics added; see *Mercury Casualty Co.* v. *Superior Court* (1986) 179 Cal.App.3d 1027, 1032-1033 [225 Cal.Rptr. 100] [experts appointed under section 730 are necessary only when the court sees the need for an assessment by a disinterested and impartial expert who is not advocating on behalf of a party to the action].)

the juvenile court's initial assumption of jurisdiction was justified by conditions that "still exist," Edward waived his right to complain about the court's action on appeal. This case is thus not controlled by *Jennifer V.*, and the motion to dismiss has merit.

The distinction we draw between this case and what happened in *Jennifer V.* we have drawn before, but only in unpublished decisions. Unfortunately, our repeated application of the distinction has gone unheeded. In fact, the practice described appears to be increasing in frequency. This decision should serve notice that such stipulations are fatal to pending appeals.

The appeal is dismissed.

Crosby, Acting P. J., and Scoville, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 1999. Kennard, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.