Filed 2/25/14  In re Shawn V. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re SHAWN V., a Person Coming Under the Juvenile Court Law. | B247166 |
| | (Los Angeles County Super. Ct. No. CK74641) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN V.,<br><br>    Defendant and Appellant,<br><br>DANIEL V. et al.,<br><br>    Appellants,<br><br>MARK D. et al.,<br><br>    Respondents. | |

APPEALS from orders of the Superior Court of Los Angeles County, Anthony A. Trendacosta, Juvenile Court Referee.  Affirmed.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant Jonathan V.

Rich Pfeiffer for Appellants Daniel V. and Carol V.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel for Plaintiff and Respondent, Department of Children and Family Services.

Ernesto Paz Rey; Law Offices of Pamela Rae Tripp and Pamela Rae Tripp for Respondents Mark D. and Alicia D.

_____

Carol V. and Daniel V., the paternal grandparents of five-year-old Shawn V., appeal from an order denying their Welfare and Institutions Code section 388[1] petition seeking custody of Shawn. Carol and Daniel contend they were entitled to have Shawn placed with them in accordance with the relative placement preference in section 361.3. They also appeal from the order denying their subsequent section 388 petition requesting appointment of an additional therapist pursuant to Evidence Code section 730 to assess the bond they shared with Shawn and the benefit to Shawn of continuing their visitation with her. They contend the court improperly delegated that decision to Shawn's existing therapist.[2] Jonathan V., Shawn's father, appeals from the March 21, 2013 order denying his own request for the appointment of an Evidence Code section 730 evaluator as well as from the May 6, 2013 order terminating his parental rights. Jonathan has joined in Carol and Daniel's arguments and, in addition, contends the court erred in denying his request for a continuance of the section 366.26 hearing.[3] We affirm.

---

[1]    Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Carol and Daniel filed separate notices of appeal from orders entered December 10, 2012 (Case No. B247166) and March 4, 2013, March 21, 2013, April 29, 2013 and May 6, 2013 (Case No. B248902). On May 29, 2013 we ordered those appeals consolidated under Case No. B247166.

[3]    Carol and Daniel have joined Jonathan's arguments as well.

**FACTUAL AND PROCEDURAL HISTORY**

1. *The Petition*

Shawn was detained on May 2, 2011 and placed with licensed foster parents Mark D. and Alicia D. after the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition alleging Shawn's mother, Michelle D., frequently used methamphetamine, was mentally and emotionally unstable and had engaged in a violent altercation with Shawn's maternal great-grandmother, Janet D., in Shawn's presence.[4] An amended petition added allegations Jonathan was a frequent abuser of alcohol, prescription medication and crack cocaine and had a history of engaging in violent altercations in Shawn's presence.

2. *The June 30, 2011 Jurisdiction Hearing and July 7, 2011 Disposition Hearing*

At the jurisdiction hearing the juvenile court sustained an amended petition as to both Michelle and Jonathan under section 300, subdivision (b) (failure to protect). At disposition the court found by clear and convincing evidence that remaining in her parents' custody posed a substantial danger to Shawn's physical health and well-being and no reasonable means other than removal existed to protect Shawn. The court declared Shawn a dependent child of the court and placed the care, custody and control of Shawn under the supervision of the Department for suitable placement. In addition, the court ordered family reunification services for both parents and, at Michelle's request, directed the Department to investigate Janet as a possible placement for Shawn. Jonathan did not appear at either hearing.

3. *The August 24, 2011 Progress Report Hearing*

At an August 24, 2011 progress hearing the Department advised the court Carol and Daniel had expressed interest in caring for Shawn; a criminal background check had revealed Daniel had had prior criminal convictions, mostly for drug possession; the most

---

[4]     Janet is at times referred to in the record on appeal as Shawn's grandmother and at other times as Shawn's great-grandmother. It appears both designations are accurate. Janet adopted Michelle, her granddaughter, making Shawn both Janet's grandchild and her great-grandchild.

recent conviction was nearly 20 years old; and Daniel was in the process of obtaining the necessary paperwork to obtain a criminal records exemption in accordance with section 361.4, subdivision (d)(2).[5] The Department also reported Shawn's maternal aunt and uncle had expressed interest in being evaluated as a suitable placement; and foster parents Mark and Alicia had expressed their own "strong desire" to adopt Shawn in the event reunification efforts failed. The Department recommended Shawn remain with Mark and Alicia pending criminal background checks for Janet and the maternal aunt as well as the results of Daniel's criminal records exemption request. The court directed that its placement order remain in effect and continued the matter to January 5, 2012 for a six-month review hearing.

4. *The Six-month Review Hearing*

At the six-month review hearing (§ 366.21, subd. (e)), which was continued to February 8, 2012, the court found Michelle in full compliance with her case plan; Jonathan, who was recently incarcerated, was found to be in partial compliance. Jonathan's counsel requested a pre-release investigation (PRI) of Carol and Daniel so that Shawn could be placed with them during the reunification period. The Department reported Daniel's request for a criminal records exemption was still pending. The court ordered a PRI of Carol and Daniel, but directed that any change in placement be "walked on, especially as we get close" to the 12-month review hearing. The court explained placement with Carol and Daniel would not be automatic even if Daniel were successful in obtaining the criminal records exemption. If Michelle continued to make good progress, the court stated, it may not make sense to move Shawn from her current placement to Carol and Daniel, only to be returned to Michelle's custody in a few months following a successful reunification: "I don't want this child bouncing around from

---

[5]     Section 361.4, subdivision (d)(2), prohibits placement of a child in a home of a relative if that person has been convicted of a crime unless a criminal records exemption is granted by the Director of Social Services pursuant to Health and Safety Code section 1522, based on "substantial and convincing evidence to support a reasonable belief that the person with the criminal conviction is of such good character as to justify the placement and not present a risk of harm to the child . . . ."

4

home to home to home if it's not necessary."[6]  The court continued the matter to July 3, 2012 for the 12-month review hearing.

5. *The 12-month Review Hearing*

At the 12-month review hearing (§ 366.21, subd. (f)) on July 3, 2012, the court found Michelle in full compliance with the case plan.  Based on Michelle's progress, the court found a "substantial probability" Shawn would be returned to her mother (§ 366.21, subd. (g)) and continued the case to September 24, 2012 for a progress report hearing.  The court ordered the Department to continue to follow-up with Carol and Daniel as a back-up plan in the event reunification failed.[7]  However, observing the likelihood of a successful reunification in this case, the court stated, "If everyone lives up to the agreement it appears to be likely that the child is going to go home to the mother somewhere within the next three months.  And if that's going to continue, I hate to see this child bouncing from placement to placement to placement if that's not going to be necessary.  I certainly appreciate and would order the Department to continue to follow up with the grandfather [Daniel] as a backup plan.  But if we're getting close to return, I don't see how it makes sense to change placements, placement to placement.  I don't think that's in the child's best interest when the child is already stable where she is."

6. *The Failure of Reunification*

By the September 24, 2012 progress report hearing, Michelle was no longer in compliance with her case plan.  After leaving her residential drug treatment program, Michelle tested positive for methamphetamine.  She had missed several drug tests in July, August and September and had stopped attending drug treatment meetings.  The Department recommended terminating her reunification services and setting a section 366.26 hearing to terminate her (and Jonathan's) parental rights.  Michelle opposed the

---

[6]     Carol and Daniel attended the hearing but did not file a section 388 petition.  Their appeal from the February 8, 2012 order was dismissed for lack of standing.

[7]     The Department reported Daniel's criminal record exemption request was still pending.

5

Department's recommendation and sought additional reunification. The court set the matter for a contested 18-month review hearing (§ 366.22) for November 5, 2012.

7. *Carol and Daniel's Requests for De Facto Parent Status and Section 388 Petition Requesting Custody of Shawn*

On October 18, 2012 Carol and Daniel filed a request for de facto parent status and a section 388 petition seeking custody of Shawn, advising the court Daniel had been successful in obtaining his criminal records exemption. As for the delay in obtaining the exemption, the blame, they argued in their supporting declarations, fell entirely on the Department. Carol and Daniel had done everything since learning about the dependency proceedings in June 2011 to be considered relative caregivers for Shawn, including obtaining the necessary paperwork and submitting Daniel's request for a criminal records exemption as early as October 2011. They heard nothing from the Department for nearly a year. Then, in September 2012 they were told the social worker in charge of Daniel's request had retired and the Department had lost his paperwork. Once Daniel resubmitted his paperwork to the newly-assigned social worker, he was able within a matter of a few weeks to obtain the requisite criminal records exemption. Daniel argued, had the Department behaved in a reasonable and diligent fashion, he would have received his criminal record exemption much sooner. Carol and Daniel also noted they had regularly attended most of the dependency proceedings and had been visiting with Shawn. Carol and Daniel explained they and their three minor children had been an integral part of Shawn's life prior to her detention and wanted to remain so, including adopting her in the event parental rights were terminated.

Mark and Alicia filed their own request for de facto parent status on November 2, 2012.

8. *The November 5, 2012 18-month Review Hearing*

On November 5, 2012, after holding a contested hearing pursuant to section 366.22, the court terminated reunification services for both Jonathan and Michelle and set a section 366.26 hearing regarding the termination of their parental rights for March 4, 2013. At the same hearing the court also heard arguments concerning the requests for de

6

facto parent status and Carol and Daniel's section 388 petition seeking placement of Shawn with them.

The court granted Mark and Alicia's request for de facto parent status and denied Carol and Daniel's, finding Carol and Daniel had not met the day-to-day criteria for de facto parent status. After taking Carol and Daniel's section 388 petition under submission, the court denied the motion on December 10, 2012. In a detailed written explanation of its ruling, the court acknowledged the Department had "dropped the ball" in processing Daniel's request for a criminal records exemption but found the delay had not been in bad faith. More significantly, the court observed the delay had not made a difference in Shawn's placement, reiterating its earlier findings that reunification had appeared to be on track throughout the dependency proceedings and, at the time Carol and Daniel requested custody, it did not appear to be in Shawn's best interests to change her placement temporarily, only to change it again a short time later. The court explained, "What is unfortunate, and adversely impacted all that came thereafter, is that the mother relapsed and derailed reunification with the child. Th[us], it appears to this court that the time lapse issue is essentially irrelevant."

Citing *In re Joseph T.* (2008) 163 Cal.App.4th 787, the court acknowledged that the statutory preference for placing a dependent child with a relative governs at least through the completion of reunification services and, potentially, post-reunification as well (see *In re Stephanie M.* (1994) 7 Cal.4th 295, 320 [declining to determine whether statutory preference for relative placement applies once reunification services have been terminated]), but explained the statutory preference does not guarantee placement: Here, "Shawn is in the happy circumstance where she has two families who appear to love and care for her and appear to be ready and willing to adopt her. The de facto parents [Mark and Alicia] have an approved home study while the grandparent[s'] home study is pending. If Shawn [were] a newborn, the court's decision would be easy, all considerations under [361.3] would mitigate strongly in favor of the current caretakers: They have taken excellent care of the child for the last [18] months without incident; they cooperated with the reunification plan, especially with the mother; Shawn has integrated

7

herself into the family, calling the current caretakers 'mom' and 'dad.' However, Shawn was almost three [years old] when she was detained. The grandparents['] relationship with the child goes back practically since her birth. Most importantly, they are family. . . . [T]hey spent considerable time with her early on, during her first two years, and she seemed comfortable in their presence. However, their contact with the child has been somewhat limited since the detention in April 2011, until recently. . . . What is certain today is that Shawn is in a safe and loving home where she is fully integrated into the family with 'mom' and 'dad.' While the grandparents' home study may ultimately be approved, and there is no question in the court's mind that they love the child and may be good caretakers, balancing all of the factors, the court finds that it would not be in Shawn's best interests to remove her from her home and the people she relates to as parents at this time."

> 9. *March 4, and March 21, 2013 Progress Hearings*; *Carol and Daniel's Second Section 388 Petition; and Termination of Daniel and Carol's Visitation*

The section 366.26 hearing scheduled for March 4, 2013 was continued due to Jonathan's absence. At the progress hearing held in its place, Shawn's counsel advised the court Shawn's privately retained therapist, Lynda Doi-Fick, had telephoned him that morning expressing concerns about the adverse effect Carol and Daniel's recent visits were having on Shawn. Shawn's counsel requested the court either make the visits monitored or give the Department the discretion to restrict the visitation. The court continued the matter to March 21, 2013 to enable Doi-Fick to provide a written report of her concerns.

On March 21, 2013, apparently prior to the progress hearing, Carol and Daniel filed a second section 388 petition requesting the appointment of an additional therapist pursuant to Evidence Code section 730, citing behavior they had observed during a recent visit: Shawn had pulled up her dress and touched her genitals. Carol thought the behavior was sexualized and feared it was indicative of some abuse. Carol and Daniel also argued an Evidence Code section 730 evaluation by someone other than Doi-Fick would assist the court in identifying the bond they shared with Shawn; Doi-Fick, they

8

asserted, had made no effort to interview them or evaluate their relationship with their granddaughter. They argued it was in Shawn's best interests for the court to have a comprehensive, independent assessment of Shawn to determine an appropriate plan for her.

At the March 21, 2013 progress hearing Shawn's counsel requested the court terminate visitation with Carol and Daniel, relying on the March 18, 2013 written report from Doi-Fick detailing Shawn's "extreme emotional" reaction to Carol and Daniel's visits. Doi-Fick opined that Shawn was experiencing dissociative amnesia and was "gravely distressed" by her contact with Carol and Daniel and/or her separation from Mark and Alicia. Doi-Fick wrote, "I strongly ask that you reconsider the current visit schedule" with Carol and Daniel; Shawn's current anxiety about the visits "decrease any likelihood of forming a meaningful attachment to them and her distress will cause further emotional detriment."

Jonathan urged the court not to rely on Doi-Fick's report because she had not interviewed Carol and Daniel and had no knowledge of the bond they shared with Shawn. Consistent with Carol and Daniel's section 388 petition filed the same day, Jonathan requested the court appoint an Evidence Code section 730 evaluator to interview Carol and Daniel to assess the bond they shared with Shawn. The court denied Jonathan's request but noted that it did not have "any problem with the Department inquiring of Lynda Doi-Fick whether or not she believe[d] it would be fruitful, and in the best interests of her client, to have any type of joint assessment. And if she thinks it is appropriate for the report, she can take that input. But I am not having the type of situation where the [therapist] is going to be sitting with the grandparents and the child [to] see how they interact. That is just not going to happen. If Lynda Doi-Fick thinks that input from the grandparents would be of any import, I will certainly accept her report."

Based on the evidence presented by Shawn's counsel and the Department, the court terminated visitation with Carol and Daniel. The court acknowledged Daniel and Carol's distress at not being able to visit with Shawn at this time, but observed the focus

9

post-reunification is "on the child, not on the parents, not on the grandparents, not on anyone else at this particular point, but on the child and what is in the child's best interests. I have a progress report. The child's therapist, [who] happens to be a well-respected member of our [Evidence Code section ] 730 panel, is indicating very strongly it is not in the child's best interests to continue down this road, especially in light of where we are on this case in terms of the permanency planning hearing in less than a month. If things change then, of course, the court can change [the order.] At this point I cannot find it is in the child's best interests to continue visitation with the grandparents at this time. The facts do not support it."

10. *The May 6, 2013 Hearing Denying Carol and Daniel's Second Section 388 Petition and Terminating Michelle and Jonathan's Parental Rights*

On May 6, 2013, at the scheduled hearing on Carol and Daniel's second section 388 petition,[8] Carol and Daniel also filed a "motion for standing and relative placement" arguing section 361.3 mandated placement of Shawn with them. The Department and Shawn's counsel urged the court to deny the motions. The Department's counsel reported the Department had investigated the concern about potential sexual abuse and found the allegation unfounded. Shawn's counsel expressly cited a May 1, 2013 report by Doi-Fick highlighting that Carol and Daniel had caused Shawn great anxiety by referring to Alicia as her "fake mommy." In addition, Mark and Alicia informed the court Carol and Daniel had authorized photographs of Shawn to be shown in the local print and broadcast media in a campaign to obtain public support for their position in the dependency proceedings, actions Mark and Alicia argued had been highly detrimental to Shawn.

The court denied each of the section 388 motions as well as Carol and Daniel's "motion for standing and relative placement." The court found it did not need another

---

[8] In April Carol and Daniel's three minor children filed their own section 388 petitions seeking modification of the court's March 21, 2013 order terminating visitation. The hearing on those petitions and on Carol and Daniel's second section 388 petition was originally scheduled for April 29, 2013 but was continued on the court's motion to permit the bench officer familiar with the case to hear and decide the petitions.

therapist evaluation to help it decide the issues before it nor did it make any sense to put Shawn through another psychological assessment by someone she did not know. The court ruled Carol and Daniel had not presented any new evidence or changed circumstances nor had they come close to demonstrating placement with them was in Shawn's best interests.[9]

Jonathan requested a continuance of the selection and implementation hearing to permit him to cross-examine Doi-Fick. He also informed the court he would withdraw his request for a continuance and any objection he would otherwise have to termination of parental rights if Shawn were placed with Carol and Daniel for adoption. He did not raise any issue as to Shawn's adoptability or the application of any statutory exception to termination of his parental rights. The court denied Jonathan's request for a continuance, stating it was not relying on Doi-Fick's report with respect to the termination decision. The court terminated Michelle and Jonathan's parental rights and identified Mark and Alicia as Shawn's prospective adoptive parents.

## DISCUSSION

1. *The Statutory Preference for Relative Placement*

"[P]referential consideration shall be given to a request by a relative of the child for placement of the child with a relative" when a child is removed from the physical custody of his or her parents pursuant to section 361. (§ 361.3, subd. (a).) "'Preferential

---

[9]     The court stated, "[T]he only thing that's changed in terms of changed circumstances in this case, from the time that the court issued its written decision back in [December 2012] is that things have gone completely downhill. At the time, I indicated that I felt that this child was lucky because she had at least two families who had the child's best interest at heart, and that this child was lucky and that somebody's hearts were going to be broken. I also felt at that time and still feel that I had to make a ruling sooner rather than later because otherwise the tug of war was going to get worse and the child was going to be adversely affected. And I think that I've been proven right by that. And I think that everything that's gone on since then has been completely not in the child's best interest, regardless of what one may argue somebody's changed circumstances are. . . . [T]o say that the way in which this case has played out over the last few months with respect to the paternal grandparents I think confirms that I made the right decision back in [December]."

11

consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) The relatives entitled to preferential consideration for placement include "an adult who is a grandparent, aunt, uncle, or sibling." (§ 361.3, subd. (c)(2).) The preferential consideration continues at least throughout the reunification period, even when the child is initially placed with a nonrelative. (*In re Joseph T., supra,* 163 Cal.App.4th at p. 795.)

In determining whether relative placement is appropriate, the juvenile court and the Department are to consider, among other factors, "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] . . . [¶] (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect. [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for and provide legal permanency for, the child if reunification is unsuccessful. . . ." (§ 361.3, subd. (a).)

Preferential consideration, however, is not a guarantee of placement (*In re Joseph T., supra,* 163 Cal.App.4th at p. 798 ["[t]he relative placement preference . . . is not a relative placement guarantee"]) nor does section 361.3 create an evidentiary presumption that must be overcome before a child may be placed with a nonrelative over a statutorily qualified preferred relative. (*In re Stephanie M., supra,* 7 Cal.4th at p. 321.) The only statutory mandate of section 361.3 is for the court to consider as a first priority whether placement with the relative "is appropriate, taking into account the suitability of the relative's home and the best interest of the child." (*In re Stephanie M.*, at p. 321.)

The juvenile court's decision on relative placement is a discretionary one. Absent an abuse of that discretion, the juvenile court's determination regarding relative placement pursuant to section 361.3 must be affirmed. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067 ["We are persuaded that the abuse of discretion standard should be applied to the review on appeal of the juvenile court's determination regarding

relative placement pursuant to section 361.3. Such a determination, like decisions in custody cases, involves primarily factual matters and a judgment whether the ruling rests on a reasonable basis."]; accord, *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1420 ["juvenile court's placement orders are reviewed under the abuse of discretion standard; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse"].)

2. *Standard of Review of Section 388 Petitions*

Section 388 provides for modification of prior juvenile court orders when the petitioner presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interest. (*In re Stephanie M., supra,* 7 Cal.4th at p. 317; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) We may disturb the juvenile court's exercise of that discretion only in the rare case when the court has made an arbitrary, capricious or "patently absurd" determination. (*In re Stephanie M.,* at p. 318.) We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court. (*Ibid.*) We ask only whether the juvenile court abused its discretion with respect to the order it actually made. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)

3. *The Juvenile Court Did Not Abuse Its Discretion in Denying Carol and Daniel's October 18, 2012 Section 388 Petition Seeking Custody*

Carol and Daniel contend the court erred in denying their first section 388 motion seeking to have Shawn placed with them. They highlight their own prompt action in requesting placement and insist the Department and the court both failed them: The Department "dropped the ball" and failed to timely process Daniel's exemption request; the court ignored its obligation to safeguard Shawn's best interests by ensuring the Department diligently pursued its investigation of Daniel as a relative caregiver. As a result, they argue, they lost "their statutory right" to have Shawn placed with them.

Contrary to Carol and Daniel's characterization of the record, Shawn's continued placement with Mark and Alicia was not the result of lax oversight by the court, but a

carefully considered determination of Shawn's best interests at each decision point. The court ordered a PRI of Carol and Daniel as soon as Jonathan requested it.[10] When advised by Carol and Daniel of the delay in processing Daniel's criminal records exemption request, the court admonished the Department, but also made clear the delay had had nothing to do with its placement decision. As discussed, Shawn remained placed with Mark and Alicia because reunification had appeared likely; it was not in Shawn's best interests at that time to uproot her from the stability she found with Mark and Alicia and move her to Carol and Daniel, only to return her a short time later to Michelle. When reunification failed, the court carefully considered Carol and Daniel's October18, 2011 section 388 request for custody. Thoughtfully balancing the benefit to Shawn of being with her grandparents, aunts and uncle against the benefit and stability she had derived from being with the people she thought of, and identified, as her mom and dad, the court found, at that time, it was in Shawn's best interests to continue to visit with her grandparents, but remain with Mark and Alicia.

Carol and Daniel mistakenly insist the court's best-interest determination is trumped by section 361.3's relative placement preference. However, section 361.3 does not confer a "statutory right" to custody of their granddaughter. Rather, the statute mandates the court assess and consider favorably for placement a relative of a dependent child *subject to* the suitability of the home and the best interests of the child. (*In re Stephanie M., supra,* 7 Cal.4th at p. 320; *In re Joseph T., supra,* 163 Cal.App.4th at p. 795.) That is exactly what this court did throughout these dependency proceedings. Carol and Daniel take issue with the court's conclusion; but there is no question the juvenile court's carefully considered determination was within its ample discretion on such matters.

---

[10]     Jonathan had not appeared at earlier hearings and had not told the Department about Carol and Daniel.

14

4. *The Juvenile Court Did Not Abuse Its Discretion in Denying the Requests for the Appointment of an Additional Therapist*

Jonathan, Carol and Daniel challenge the court's denial of their respective requests for the appointment of an additional therapist pursuant to Evidence Code section 730 to assess the bond Carol and Daniel shared with Shawn and the benefit to Shawn of continuing their visits with her.[11] Analogizing to cases holding the juvenile court may not delegate to a child's therapist the decision whether visitation between a parent and child should occur (see *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237; *In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1688; *In re Donovan J.* (1997) 58 Cal.App.4th 1474, 1476), they argue the court impermissibly delegated to Doi-Fick the question whether an additional assessment by an another therapist was appropriate. The court did no such thing. The court determined it did not need assistance from another therapist to make its decision concerning visitation and, in fact, expressed concern an additional evaluation could be detrimental to Shawn's emotional well being. Nonetheless, the court acknowledged that Doi-Fick might think it useful to interview Carol and Daniel as part of Shawn's treatment, and the court stated it would take that information into account if Doi-Fick elected to do so. Far from an impermissible delegation of the court's judicial function, the court properly ruled on the Evidence Code section 730 request, leaving therapeutic, not judicial, decisions to Doi-Fick. On this record the ruling denying the request for a bonding study was well within the court's discretion. (*In re Eric A.* (1999) 73 Cal.App.4th 1390, 1394 ["[o]f course, the trial court is never obliged to appoint an expert to assist it in making a factual, much less a legal, determination under Evidence Code section 730 unless, as that section provides, '*it appears to the court . . . that expert evidence is . . . required*'"]; cf. *In re Richard C.* (1998) 68 Cal.App.4th 1191, 1197 [denial of Evid. Code, § 730 bonding study reviewed for abuse of discretion].)[12]

---

[11] Jonathan made his request on March 21, 2013, after reunification services had been terminated. We question whether, under those circumstances, Jonathan was aggrieved by the order and has standing to contest this visitation decision. (Cf. *In re K.C.* (2011) 52 Cal.4th 231, 238 [father whose reunification services had been terminated lacked standing to challenge denial of grandparents' section 388 petition seeking

5. *The Disentitlement Doctrine Has No Application in this Appeal*

Carol and Daniel contend the Department is precluded under the disentitlement doctrine from participating in the appeal because they failed to process Daniel's request for a criminal records exemption in a timely manner. The disentitlement doctrine is an equitable one based on the theory that a party should not be permitted to seek relief when he or she showed contempt for the juvenile court process by knowingly violating court orders. (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 244-245; *In re Kamelia S.* (2000) 82 Cal.App.4th 1224, 1225-1226; cf. *Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 531 [discussing fugitive disentitlement doctrine].) The Department contends the argument is forfeited because it was not raised below. In addition, it argues, the doctrine does not apply because it neither violated an express court order nor, as the juvenile court found, acted in bad faith.

Although Carol and Daniel's argument appears far-fetched, we need not resolve this issue because the disentitlement doctrine has no application here. It is not the Department seeking relief, but Carol and Daniel. It is their burden on appeal to

placement].) Nevertheless, because Carol and Daniel plainly have standing to contest the denial of their request made in connection with their second section 388 petition, we address the merits of their arguments.

[12]     Although Carol and Daniel filed a notice of appeal from the juvenile court's March 21, 2013 order terminating their visitation with Shawn, their briefs in this court challenge only the court's December 10, 2012 order denying their section 388 petition seeking placement of Shawn with them and its May 6, 2013 order denying their section 388 petition requesting the appointment of an Evidence Code section 730 evaluator. Accordingly, any challenge to the March 21, 2013 order terminating their visitation has been forfeited. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issues not raised on appeal are deemed forfeited]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see also *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [same].) Carol and Daniel's joinder in Jonathan's arguments does not assist them. Jonathan's appeal from the March 21, 2013 order relates solely to the denial of his Evidence Code section 730 request. For the reasons we have explained, the court's ruling denying the appointment of an Evidence Code section 730 evaluator was well within its discretion.

16

demonstrate error requiring reversal. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141 [appellant bears burden of overcoming presumption judgment is correct by affirmatively demonstrating reversible error]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 575-576 [same].) Simply stated, Carol and Daniel have not met their burden regardless of any arguments presented by the Department. (See generally *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1077-1078 [appellant "bears the 'affirmative burden to show error whether or not [a] respondent's brief has been filed,' and we 'examine the record and reverse only if prejudicial error is found'"].)

6. *The Court Did Not Err in Denying Jonathan's Request for a Continuance*

Finally, Jonathan argues the court erred in denying his May 6, 2013 request for a continuance to permit him to cross-examine Doi-Fick. At the hearing, Jonathan's request was not based on a desire to challenge the termination of his parental rights, but to support Carol and Daniel's section 388 petition and challenge Doi-Fick's recommendation that Carol and Daniel's visitation be terminated. Under these circumstances Jonathan's standing to challenge the denial of his request for a continuance is questionable. (See *In re K.C., supra,* 52 Cal.4th at p. 238.) Even if the request for a continuance was, as Jonathan now suggests, to enable him to cross-examine Doi-Fick for purposes of questioning Shawn's adoptability, a threshold determination in a section 366.26 hearing (*In re Celine R.* (2003) 31 Cal.4th 45, 53; *In re Marilyn H.* (1993) 5 Cal.4th 295, 307), the court made clear Doi-Fick's assessment of Shawn had no bearing on the termination decision; and Jonathan does not contend otherwise.[13] Thus, Jonathan has not shown the juvenile court's denial of his request for a continuance was an abuse of its broad discretion on such matters or that, if there were error, it was in any way prejudicial. (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.)[14]

---

[13]    Apart from contesting the court's denial of his request for a continuance for purposes of cross-examining Doi-Fick on the question of Shawn's adoptability, Jonathan does not challenge the order terminating his parental rights.

[14]    Concurrently with the filing of its respondent's brief, the Department moved for judicial notice of (1) its June 21, 2013 petition pursuant to section 388 requesting the

17

## DISPOSITION

The juvenile court's orders of December 10, 2012, March 21, 2013 and May 6, 2013 are affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.

---

court order therapeutic visitation and conjoint counseling between Shawn and her paternal grandparents, Carol and Daniel, and defer adoptive placement and finalization of adoption, and (2) the juvenile court's July 8, 2013 minute order denying the petition. Carol and Daniel joined the Department's request; Mark and Alicia opposed it. No appeal was taken from the court's denial of the section 388 petition. The request for judicial notice is denied.