Filed 12/16/14

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID JOHN VALENCIA,<br><br>    Defendant and Appellant. | F067946<br><br>(Super. Ct. No. CRF30714)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tuolumne County.  Eleanor Provost, Judge.

Stephanie L. Gunther for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

## INTRODUCTION

The Three Strikes Reform Act of 2012 (hereafter Proposition 36 or the Act) created a postconviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies. If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e), he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.[1] (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

After the Act went into effect, David John Valencia (defendant), an inmate serving a term of 25 years to life following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition for recall of sentence and request for resentencing under the Act. Following a hearing, the trial court found defendant to be an unreasonable risk to public safety and denied the petition.

We conclude the trial court did not abuse its discretion by denying the petition. In the unpublished portion of our opinion, we reject defendant's claims the trial court used the wrong standard, failed to properly evaluate whether defendant posed an unreasonable risk to society, and had to appoint an expert to evaluate defendant regarding current dangerousness; and his claim the prosecution did not meet its burden of establishing dangerousness; his claim his sentence of 25 years to life constitutes cruel and unusual punishment; and his claim the errors violated his right to due process. In the published portion, we conclude recently enacted section 1170.18, subdivision (c) does not modify section 1170.126, subdivision (f). We affirm.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

2.

## FACTS AND PROCEDURAL HISTORY

On September 13, 2009, neighbors heard an argument between defendant and his wife, Carrie Kobel. They were yelling and screaming and Kobel was crying.[2] Kobel was then seen coming down her driveway, with defendant following. Defendant pushed Kobel, causing her to fall to the ground, then punched her multiple times. When Kobel, who was screaming for help, asked witnesses to call the police, defendant told them to mind their own business and became aggressive and intimidating toward them. When the police arrived, Kobel related she and defendant had gotten into an argument when she went to move her truck into the driveway so friends coming over would have a place to park. Kobel's driver's license had been suspended due to a vehicle accident in which she had been under the influence of alcohol. Defendant objected to her driving because the couple had been drinking and he thought she was going to leave. Kobel told him she was only moving the truck, but when she went to do so, defendant hit her in the back of the head. Defendant denied there had been a fight; he said Kobel was intoxicated and attempting to leave, and he was only trying to stop her. Although he denied hitting Kobel, injuries to his knuckles were inconsistent with that claim. Kobel was treated for a laceration on her head that was closed with staples.

At trial, a woman who had been in a relationship with defendant in 2000 testified defendant had assaulted her by hitting her "full force" with his fist between her temple and ear. She suffered a ruptured eardrum from the incident.

On December 2, 2009, a jury convicted defendant of felony spousal abuse (§ 273.5). He admitted suffering five felony convictions, two of which constituted strikes. On January 6, 2010, he was sentenced to prison for 25 years to life.

---

[2]     The facts of defendant's commitment offense are taken from our opinion in *People v. Valencia* (Mar. 3, 2011, F059244) [nonpub. opn.], which is contained in the clerk's transcript of the present appeal.

3.

On May 13, 2013, defendant filed a petition to recall sentence and request for resentencing under section 1170.126.[3] Defendant represented his strike record consisted of a 1995 conviction for kidnapping (§ 207, subd. (a)) and a 1996 conviction for making a criminal threat (§ 422). Appended to the petition was a letter from defendant's parents, stating their support for him and willingness to assist him in obtaining psychological help and drug/alcohol treatment; a letter from the Salvation Army Adult Rehabilitation Center in San Francisco, stating it appeared defendant was eligible for intake; letters from the Delancey Street Foundation in San Francisco, thanking defendant for his interest and explaining how to apply upon release, but stating acceptance could not be guaranteed;[4] an informational "chrono," dated March 8, 2010, documenting defendant requested segregated housing because he feared for his safety after refusing to sign a petition being submitted by other White inmates, one of whom accused him of being a coward, after which defendant was told he had to stab the person who called him a coward or he would be "'dealt with'"; and an inmate request, dated March 12, 2013, in which defendant asked to be placed on waiting lists for anger management and Alcoholics Anonymous (AA) meetings. Defendant also related he had enrolled in a mail-order anger management course. He subsequently presented a certificate, dated May 15, 2013, attesting to his completion of the "'Grant me the Serenity Workbook" for AA, and inmate passes showing he was issued a pass allowing him to attend AA meetings on April 24, May 8, and May 15, 2013.[5]

---

**3** The petition was originally filed on April 15, 2013. It is unclear from the record why the petition was refiled.

**4** Several of the letters were from 2009.

**5** Although the passes contained spaces for arrival and departure times, none were noted.

The People opposed the petition. They asserted that in addition to the strike convictions, defendant had felony convictions for violating section 273.5 in 2000, section 69 in 1996, and Vehicle Code section 23152, subdivision (a) in 1996, in addition to 12 misdemeanor convictions between 1987 and 2007. The People set out the comments made by the trial court when it denied defendant's request to dismiss one of his strikes for purposes of sentencing on his commitment offense, and argued circumstances had not changed. They asserted defendant's prior record documented his violence, his continuous pattern of criminal conduct, and his failure to learn despite being offered treatment and rehabilitation programs. They also asserted defendant had not participated in any programs while imprisoned to address his violent tendencies. Accordingly, they argued he posed an unreasonable risk of danger.

In his reply to the opposition, defendant noted his commitment offense was not for a serious or violent felony, so if he were sentenced now, the court would not have the option of sentencing him to 25 years to life; the prosecutor offered him a six-year sentence prior to trial; and the commitment offense involved him "wrestl[ing]" with his wife in an attempt to stop her from driving because she was intoxicated. Defendant argued the People had the burden of establishing he was an unreasonable risk to public safety, and his crimes from a decade earlier were insufficient. He noted he had not had any further convictions while incarcerated, and asserted his prison record did not demonstrate patterns of violent and predatory behavior.

The petition was heard August 9, 2013, before the judge who sentenced defendant to the third strike term.[6] At the outset, the court found defendant eligible for resentencing, and placed the burden on the People with respect to whether resentencing

---

**6** We recite the evidence and argument at the hearing, and the court's ruling, in some detail due to the way defendant has excerpted minor portions — particularly of the court's comments — as a basis for many of his claims on appeal.

defendant would pose an unreasonable risk of danger to public safety. Over the prosecutor's objection, the trial court admitted a document showing defendant's in-prison risk classification was one, which was low.

The defense called witnesses at the hearing. Defendant's mother testified she had not seen defendant during his most recent prison stay until the Sunday before the hearing, as she was partially disabled and unable to travel, although they communicated by letter and sporadically by telephone. Since defendant was no longer under the influence of alcohol, his mother noticed his attitude was changing. He had apologized for being such a disappointment. If defendant were released from prison, he would be able to live with his parents in Sonora.

Defendant testified he had been in prison this last time almost four years, and he had two prior prison terms.[7] During his current term, he had no disciplinary actions. During his previous terms, he had one write-up for brewing alcohol. Defendant related that during his current prison term, he was in AA and had been taking a mail-order course on anger management and learning how to live a better life. Due to overcrowding, he was "in reception" for 28 months, where nothing was offered. Now, however, he attended AA meetings once a week. The mail-order course, which he only recently discovered, involved a curriculum where the school sent information, the student completed and returned it, and the school gave a score. Defendant had done the first six lessons. He did not know how many were left before he received his certificate. He started both AA and the mail-order course around April 2013.

---

[7] The prison term defendant had before his current term was for felony domestic battery. He pled guilty and was sentenced to four years. Defendant admitted having violated probation at various times, but denied violating a protective order in his prior domestic violence case. He completed a 52-week batterer's course in conjunction with that domestic violence case.

Defendant related that since 2010, he had been housed in protective custody. He was asked to stab someone and refused. He explained that the gangs run the prison, and if an inmate does not do what they say, he will be next. Because defendant did not want to be violent, he went into protective custody.

Prior to trial, defendant was offered a six-year sentence. He turned it down because his wife said she bumped her head when she got in the truck. Defendant did not remember much about the day the incident happened, but knew he stopped her from drinking and driving. He did not make the right decisions, but was under the impression he had some type of reduced culpability.

If defendant were released from prison, he planned to enter a residential program such as the Salvation Army or Delancey Street, so he could learn to change his life. Both were one- or two-year programs. Defendant represented he was accepted into Delancey Street earlier, and had been accepted into the Salvation Army program since he had been in prison.

Defendant apologized for what he had done and stated he had learned his lesson. He professed a desire to change his life. He stated he was ready to change his life and be sober.

At the conclusion of the hearing, defense counsel argued that anyone with strike priors would have a history like defendant, so something more was needed to show he would pose an unreasonable risk of danger. Counsel argued the strikes were 17 and 18 years old, and the felony before the commitment offense was nine years earlier. Counsel pointed to defendant's lack of in-prison disciplinary record, and noted that if the current case occurred now, defendant's maximum sentence would be eight years. Counsel argued defendant wanted to change his life and was going to go into a program. Given all the circumstances, he asserted, the People had not met their burden of showing defendant was an unreasonable risk.

The prosecutor argued that being a good prisoner was not the same thing as being a safe citizen. He acknowledged that anyone in a three strikes case had a history, but in defendant's case, the nature of that history, intervening events, and conduct showed he was an unreasonable risk in society. The prosecutor argued that defendant had been given "break after break" and "program after program," but had done nothing to stop and in fact was continuing to be violent. The prosecutor noted that although defendant's strike convictions were some time ago, defendant continued criminal conduct in the intervening time, including violence against women that resulted in injury even after his completion of a 52-week batterers' course. The prosecutor also pointed out that defendant did not even start his AA or mail-order programs until a month before he filed his petition.

This ensued:

"THE COURT: … My concern is not whether today he would be facing the same charges.… I spent probably the last month almost thinking about it …, because … this does kind of make me think about, did I make a mistake in that sentence?

"I was well aware of Romero[8] when I sentenced him. I knew I could strike a strike. I have struck prior strikes as the DA's Office knows.…

"I think that Prop. 36 was based on the idea that judges would be sentencing people to prison … for like a billy club when you are a two striker. They were for thefts when you were a two striker. They were for drugs, possession and even transportation and maybe even possession with intent to sell. All of those would have been the kind of things I think that the public was looking at. It's hard for me to think that they intended somebody … who I do believe is dangerous to be out again. I can't think of a better predictor of future conduct than past conduct.

"And as [the prosecutor] points out, what you do in prison really doesn't have a whole lot to do with what you do when you're outside there

_____

**8**     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

and you have access to drugs and alcohol. In this case, primarily alcohol, I think. I picture the idea of his coming home and living on Stewart Street and there are bars within a block. [¶] … [¶]

"THE DEFENDANT: I won't come back to Sonora. I'll go to Delancey Street. My wife's bipolar. I'm done with domestic violence and I'm done with drinking. I'm ready to change my life. You guys got me scared straight.

"THE COURT: But we've heard that before. [¶] … [¶] … You had a previous alcohol program; did you not? What did you do that time?

"THE DEFENDANT: Stole a bottle —

"THE COURT: But you did a program for alcohol?

"THE DEFENDANT: Yeah.

"THE COURT: How long of a program?

"THE DEFENDANT: I don't know. Like, I was in AA and stuff for a year and I stayed sober the whole time. It's when I stopped participating in recovery that —

"THE COURT: Then you did a fifty-two week domestic violence program, yet we still have this offense with very serious — I think any time you have sutures, that's a big deal. Most people can be hit … without requiring sutures. This was serious.

"THE DEFENDANT: Yeah. But see —

"THE COURT: I cannot bring myself to do this. I think he is a danger to public safety. And as I said during the sentencing, he had nine grants of probation and was on probation when this happened. It was for something fairly minor.… [¶] … [¶] … But this was serious injuries to a victim and unprovoked. I just thought unprovoked. I could not and the jury could not buy the idea that you had to do something and that it was absolutely necessary for you to clobber on her to make her not drive. That was just pure nonsense and I thought so at the time and obviously the jury did too. [¶] … [¶] … I cannot grant this. I just feel that he is a danger. He is an unreasonable risk to public safety. And, in particular, to the women he's around. I just can't do this.

"So I'm going to deny the petition.… [¶] … [¶]

"THE DEFENDANT: I will be appealing this then. I have a right to an appeal …. [¶] … [¶] … I went to trial, so this new law will attach to it, so I would like for you to file a Notice of Appeal. [¶] … [¶] … Because I can show it's more likely than not that the Court would have accepted my plea, so it's not really genuine that you believe I'm a risk to public safety, because you — the other three strikers with the same case would take deals. [¶] … [¶] … I'm not a risk to public safety. This is not right."

## DISCUSSION

Defendant says the trial court erred by denying his petition because (1) the court used the wrong standard, (2) the court failed to properly evaluate whether defendant posed an unreasonable risk to society, (3) the prosecution failed to meet its burden of establishing dangerousness by a preponderance of the evidence, (4) the prosecution failed to meet its burden of establishing some evidence that defendant currently posed an unreasonable risk, and (5) the court should have sua sponte appointed an expert to evaluate defendant with respect to current dangerousness. Defendant further contends a sentence of 25 years to life constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, and that the various errors violated his due process rights. Finally, defendant contends the definition of "unreasonable risk of danger to public safety" contained in section 1170.18, subdivision (c) applies to resentencing proceedings under the Act. We reject his arguments.

## I[*]

### The trial court did not err by denying defendant's petition.

In order to be eligible for resentencing as a second strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126.[9] (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979,

---

[*]     See footnote, *ante*, page 1.

[9]     "An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c)

989.)  If the inmate satisfies all these criteria, as did defendant, he or she "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  In exercising this discretion, "the court may consider: [¶]  (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;  [¶]  (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and  [¶]  (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (*Id*., subd. (g).)

The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion.  "'Discretion is the power to make the decision, one way or the other.'  [Citation.]"  (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)  "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]'  [Citation.]"  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse-of-discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)  "'"[T]he burden is on the party

---

of Section 667.5 or subdivision (c) of Section 1192.7.  [¶]  (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12.  [¶]  (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."  (§ 1170.126, subd. (e).)

attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination … will not be set aside on review.'" [Citation.]" (*People v. Carmony, supra,* 33 Cal.4th at pp. 376-377.)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily … without considering the legal principles and policies that should have guided the court's actions." (*People v. Carmony, supra,* 33 Cal.4th at p. 377.) "An abuse of discretion is shown when the trial court applies the wrong legal standard. [Citation.]" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

Under the clear language of section 1170.126, we review the trial court's ultimate determination whether to resentence a petitioner for abuse of discretion. Of course, if there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.) Thus, the questions arise which party has the burden of producing such evidence, and to what degree of certainty, and what level of support — what standard of proof — is required for a trial court to rely on such evidence? (See *People v. Mower* (2002) 28 Cal.4th 457, 476.)

Division Three of the Second District Court of Appeal has stated that, where a court's discretion under section 1170.126, subdivision (f) is concerned, the People bear the burden of proving "dangerousness" by a preponderance of the evidence. (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301-1305 & fn. 25 (*Kaulick*); see Evid. Code, § 115.) That court determined this is so — and *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny do not apply — because "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced

under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all." (*Kaulick*, *supra*, at p. 1303.)

We agree with *Kaulick* that the applicable standard is preponderance of the evidence.[10] This does not mean, however, that the trial court must apply that standard in making its ultimate determination whether to resentence a petitioner, or we must review that determination for substantial evidence.[11] Nor does it mean evidence of dangerousness must preponderate over evidence of rehabilitation in order for resentencing to be denied. Instead, taking into account the language of subdivisions (f) and (g) of section 1170.126, we conclude it means the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made.[12] Stated another way, evidence showing a petitioner poses a

---

[10]     We have previously discussed *Kaulick* in the context of the initial determination whether an inmate is eligible for resentencing under the Act. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1058, 1060-1061; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1033, 1039-1040.) Nothing we say here should be taken as disagreement with or modification of those opinions. We deal here with a different aspect of the retrospective portion of the Act and a subject not before us in our prior cases.

[11]     The substantial evidence test applies to an appellate court's review of findings made under the preponderance of the evidence standard. (*People v. Wong* (2010) 186 Cal.App.4th 1433, 1444.) Under that test, the appellate court reviews the record in the light most favorable to the challenged finding, to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make the finding by a preponderance of the evidence. The appellate court "resolve[s] all conflicts in the evidence and questions of credibility in favor of the [finding], and … indulge[s] every reasonable inference the [trier of fact] could draw from the evidence. [Citation.]" (*Ibid*.)

[12]     Courts and parties have assumed whatever burden exists is on the People. (E.g., *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-1076; *Kaulick*, *supra*, 215 Cal.App.4th at p. 1301, fn. 25.) Such allocation is in harmony with the language of section 1170.126, subdivision (f) that an eligible petitioner "shall be resentenced … unless" the court makes the required determination.

risk of danger to public safety must be proven by the People by a preponderance of the evidence. The reasons a trial court finds resentencing would pose an unreasonable risk of danger, or its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by record evidence established by a preponderance, the trial court need not itself find an unreasonable risk of danger by a preponderance of the evidence. (See *In re Robert L., supra,* 21 Cal.App.4th at pp. 1065-1067 [discussing abuse of discretion and preponderance of the evidence standards].)

Such an interpretation is consistent with California's noncapital sentencing scheme.**13** Under the determinate sentencing law (DSL) as it existed prior to *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.) Trial courts had "broad discretion" to impose the lower or upper term instead of the middle term of imprisonment (*People v. Scott* (1994) 9 Cal.4th 331, 349), and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices (*ibid*.). Such reasons had to be "supported by a preponderance of the evidence in the record" and reasonably related to the particular sentencing determination. (*Ibid*.; see former Cal. Rules of Court, rule 4.420(b).) Even after the DSL was reformed and amended in response to

---

**13** The determination of the appropriate penalty in a capital case "'is "essentially moral and normative …, and therefore … there is no burden of proof or burden of persuasion. [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1362.)

14.

*Cunningham*, so as to eliminate judicial factfinding in selection of the appropriate term when three possible prison terms are specified by statute, establishment of facts by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions. (See *In re Coley* (2012) 55 Cal.4th 524, 557-558.)[14]

In *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, the California Supreme Court stated that, in making its discretionary sentencing choices post-*Cunningham*, "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard*, or specify the 'ultimate facts' that 'justify[] the term selected.' [Citations.] Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (Italics added.)

We do not read the foregoing statement as suggesting the People bear no burden in a proceeding to determine whether a petitioner should be resentenced under the Act. Subdivision (g) of section 1170.126 contemplates the trial court's consideration of *evidence*. It stands to reason *someone* must produce that evidence. Under Evidence Code section 115, "'[b]urden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court.… [¶] Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

---

**14** After *Cunningham* concluded the DSL violated a defendant's Sixth Amendment right to a jury trial (*Cunningham*, *supra*, 549 U.S. at p. 281), the Legislature amended section 1170 so that now "(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.) Subdivision (b) of section 1170 states the court "shall select the term which, in the court's discretion, best serves the interests of justice."

However, the trial court's ultimate determination when considering a petition for resentencing under section 1170.126 — whether resentencing the petitioner would pose an unreasonable risk of danger to public safety — is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances. Such an evaluation "is not equivalent to a factual finding." (*People v. Black*, *supra*, 41 Cal.4th at p. 814, fn. 4.) It follows, then, that the trial court need not apply a preponderance of the evidence standard, in that it need not find resentencing the petitioner would, more likely than not, pose an unreasonable risk of danger to public safety. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means "'more likely than not'"].)

*Kaulick* found the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof and the trial court's exercise of discretion as that issue is presented here, or to clarify whether the prosecution is required to establish "dangerousness" in the sense of *facts* upon which the trial court may base the ultimate determination resentencing a petitioner would pose an unreasonable risk of danger to public safety, or in the sense of establishing that determination itself. Nevertheless, we believe it supports our interpretation. *Kaulick* stated, in part: "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While [the Act] presents him with an opportunity to be resentenced to a lesser term, *unless certain facts are established*, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, *a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury*." (*Id.* at p. 1303, italics added.) The court further stated: "[I]t is the general rule in California

that once a defendant is eligible for an increased penalty, the trial court, *in exercising its discretion* to impose that penalty, may rely on *factors established by a preponderance of the evidence*. [Citation.]" (*Id*. at p. 1305, italics added.)

Finally, *Kaulick* rejected the suggestion a trial court could determine resentencing a petitioner would pose an unreasonable risk of danger to public safety, yet still have the discretion to resentence that petitioner to a second strike term. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1293-1294, fn. 12.) The court explained: "The language of … section 1170.126, subdivision (f), states that the petitioner shall be resentenced *unless* the court finds an unreasonable risk of danger. It does not state that if the court finds an unreasonable risk of danger, it can nonetheless resentence the petitioner. In any event, the ballot arguments in support of Proposition 36 emphasized that the Act would not benefit "'truly dangerous criminals.'" [Citation.] It is impossible to believe that the voters intended to allow a court the discretion to resentence defendants whose resentencing that court had already found would present an unreasonable risk of danger." (*Ibid*.)

We concur with *Kaulick*'s rejection of the argument. Nevertheless, it seems to us that if the prosecution had the burden of proving *the ultimate issue* in a resentencing proceeding, a trial court necessarily would be divested of its discretion to resentence in any case in which that burden of proof was met. Yet the language of section 1170.126, subdivision (f) expressly provides the petitioner shall be resentenced unless the court, in its discretion, makes a determination that resentencing would pose an unreasonable risk of danger. The statute does not say the petitioner shall be resentenced unless the People prove resentencing would pose such a risk.

To summarize, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act. Nor is the court's ultimate determination subject to substantial evidence review. Rather, its

finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within "the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) The facts or evidence upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence.[15] If a factor (for example, that the petitioner recently committed a battery, is violent due to repeated instances of mutual combat, etc.) is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk. (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]; cf. *People v. Read* (1990) 221 Cal.App.3d 685, 689-691 [where trial court erroneously determined defendant was statutorily ineligible for probation, reviewing court was required to determine whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)

Applying these principles to the present case, and examining the record as a whole, rather than cherry-picked fragments, it is readily apparent the trial court did not err by denying defendant's petition. We generally presume a trial court has properly followed established law. Although this presumption does not apply where the law was unclear or uncertain when the lower court acted (*People v. Diaz* (1992) 3 Cal.4th 495, 567), *Kaulick* was decided several months before the sentencing court ruled on defendant's petition. Moreover, the parties' pleadings and arguments, and the court's own comments (either at the hearing itself or on one of the occasions when the matter

---

[15] "Substantial evidence," not the significantly more deferential "some evidence" standard applicable to review of executive branch decisions in parole cases (see *In re Rosenkrantz* (2002) 29 Cal.4th 616, 658, 665), is the appropriate appellate standard.

was continued) show the court was aware of which party had to establish what and to what level of certainty.

Contrary to defendant's claim, the manner in which the court mentioned its prior *Romero* ruling does not suggest it mistook its broad authority to resentence defendant under section 1170.126 for the limited authority to dismiss a strike under that case. Nor do we agree with defendant's assertion the court failed to properly evaluate whether defendant posed an unreasonable risk to public safety by basing its finding solely on information it had at the time of the original sentencing. Evidence concerning the factors set out in subdivision (g) of section 1170.126, including defendant's lack of in-prison disciplinary record, his low-risk assessment score, and his attendance of AA meetings and participation in a mail-order anger management class, was all before the court (as was the fact defendant only started participating in AA and the mail-order class about one month before he filed his resentencing petition). That the trial court may not have expressly mentioned some of these factors does not mean it failed to consider them and, in the absence of any showing to the contrary, we presume it did so. (Evid. Code, § 664; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; cf. *People v. Sparks* (1968) 262 Cal.App.2d 597, 600-601.) Defendant's true argument is that the court did not credit them in the manner and to the extent defendant thinks is appropriate. We find the court acted well within its discretion, however, and — again contrary to defendant's claim — made its finding based on its view of defendant's current risk to society, a view that was supported by record evidence.

Defendant says the prosecution failed to meet its burden of establishing dangerousness by a preponderance of the evidence. He apparently bases this on the fact he presented witnesses while the People did not. The prosecutor adduced evidence through his cross-examination of defendant and defendant's mother, however, and was entitled to rely on information (such as defendant's criminal history, the circumstances of the commitment offense, and defendant's presently belated and previously unsuccessful

19.

rehabilitation efforts) that was already before the trial court and established at least by a preponderance.**16** We have explained the applicable burden and standard of proof, *ante*. The evidence before the court was sufficient to permit a rational trier of fact to conclude resentencing defendant would pose an unreasonable risk of danger to public safety, as required by section 1170.126, subdivision (f).

Apparently analogizing a resentencing proceeding under the Act to a parole proceeding for an inmate serving a life term (see § 3041; *In re Lawrence* (2008) 44 Cal.4th 1181, 1223-1224), defendant chides the court for failing to appoint, sua sponte, an expert to evaluate defendant with respect to current dangerousness and his psychological or mental attitude. He says it is "clear" expert psychological evidence was required to address the issue of defendant's current threat to society, if any. He is wrong.

Defendant cites Evidence Code section 730 for the proposition an expert may be appointed by a court sua sponte for the purpose of obtaining an impartial expert opinion.**17** (See *Mercury Casualty Co. v. Superior Court* (1986) 179 Cal.App.3d 1027, 1032.) That statute "does not authorize the appointment of experts after trial in connection with sentencing proceedings." (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 905; *id*. at p. 913.) Regardless of whether a proceeding under section 1170.126 is likened to a trial or is part of a sentencing proceeding, "a trial court has inherent power, independent of statute, to exercise its discretion and control over all proceedings relating

---

**16** "'Evidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (Evid. Code, § 140.)

**17** Evidence Code section 730 provides, in relevant part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court …, the court on its own motion … may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required."

to the litigation before it [citation]," including "the power to obtain evidence upon which the judgment of the court may rest [citation]." (*Johnson v. Banducci* (1963) 212 Cal.App.2d 254, 260; see *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.) Thus, it appears a court *could* appoint an expert, on its own motion, to conduct an evaluation concerning the risk of danger currently posed to public safety by an inmate seeking resentencing under the Act.[18]

However, "[t]he decision on the need for the appointment of an expert lies within the discretion of the trial court and the trial court's decision will not be set aside absent an abuse of that discretion. [Citations.]" (*People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1304, disapproved on other grounds in *People v. Martinez* (1995) 11 Cal.4th 434, 452 & *People v. Levesque* (1995) 35 Cal.App.4th 530, 539; accord, *People v. Vatelli* (1971) 15 Cal.App.3d 54, 61; see *In re Eric A.* (1999) 73 Cal.App.4th 1390, 1394, fn. 4.) Whatever the similarities between the decisions whether to resentence under the Act and to grant parole to an inmate serving a life term, appointment of an expert did not fall outside the bounds of reason in this case. The question before the court was whether resentencing defendant would pose an unreasonable risk of danger to public safety. Given the information already before the court, the court could make the required determination itself, without the input of an expert. As has been stated in the context of a claim the word "unreasonable" is impermissibly vague, "Surely a superior court judge is capable of exercising discretion, justly applying the public safety exception, and determining whether a lesser sentence would pose an unreasonable risk of harm to the public safety. [Citation.]" (*People v. Flores, supra,* 227 Cal.App.4th at p. 1075.)[19]

---

[18]  Accordingly, we need not determine the source of a court's authority to do so.

[19]  *In re Lawrence, supra,* 44 Cal.4th 1181, does not hold to the contrary. In that case, the Governor reversed a parole grant in part based on negative language found in early psychiatric evaluations of the inmate that suggested the inmate's release would pose an unreasonable risk of danger to the public. (*Id.* at pp. 1190, 1223.) The California

Defendant next contends his sentence of 25 years to life constitutes cruel and unusual punishment as prohibited by the Eighth Amendment to the United States Constitution. We question whether this issue is properly before us, since the trial court did not impose sentence, but merely left intact a sentence we already concluded was constitutional. (*People v. Valencia*, *supra*, F059244.)

In any event, for the reasons we cited in *People v. Ingram* (1995) 40 Cal.App.4th 1397, 1412-1416, disapproved on another ground in *People v. Dotson* (1997) 16 Cal.4th 547, 560, footnote 8, defendant's history of habitual criminal behavior renders his claim meritless. It is not the current charge that qualifies defendant for this term, but rather his history as a repeat offender. "[H]abitual offender statutes have long withstood the constitutional claim of cruel or unusual punishment. [Citations.]" (*Ingram*, at p. 1413.) Defendant has proven he holds little regard for the law and is immune to resultant punishments for his conduct. In this instance, "it becomes the duty of government to seek some other method to curb his criminal propensities that he might not continue to further inflict himself upon law-abiding members of society. This, we think, may be done even to the extent of depriving him permanently of his liberty.…" (*In re Rosencrantz* (1928) 205 Cal. 534, 539.)

Defendant appears to base his claim on the premise that because *now* an offender in his position would be sentenced to no more than eight years for violating section 273.5, defendant's sentence is unconstitutionally disproportionate. He says:

---

Supreme Court rejected the Governor's conclusion, stating: "[T]he passage of time is highly probative to the determination before us, and reliance upon outdated psychological reports — clearly contradicted by [the inmate's] successful participation in years of intensive therapy, a long series of reports declaring [the inmate] to be free of psychological problems and no longer a threat to public safety, and [the inmate's] own insight into her participation in this crime — does not supply some evidence justifying the Governor's conclusion that [the inmate] continues to pose a threat to public safety." (*Id.* at p. 1224.)

22.

"The sentence imposed for a violation of … section 273.5 for any other defendant in any jurisdiction in California is not the same as [defendant's] sentence. [Defendant] was sentenced to an indeterminate sentence while any other defendant would be sentenced to no more than eight years."

Defendant's premise is faulty. Any third strike offender convicted of violating section 273.5 before the Act amended sections 667 and 1170.12 is serving a sentence of at least 25 years to life, like defendant, unless he or she has been determined not to pose an unreasonable risk of danger to public safety. Defendant cites no authority for the proposition that a subsequent downward modification in a statutorily prescribed sentence renders unconstitutional a punishment that was constitutional when imposed. (See, e.g., *Ewing v. California* (2003) 538 U.S. 11, 28-31 (lead opn. of O'Connor, J.) [three strikes sentence of 25 years to life not unconstitutionally disproportionate where current offense was grand theft].)

Last, defendant contends the various errors committed by the trial court in the section 1170.126 proceeding and the disproportionality of his sentence violated his due process rights. He says the section 1170.126 hearing was fundamentally unfair because of the trial court's errors and because the hearing was defendant's "only shot at resentencing."

We have rejected all defendant's claims of error and cruel and unusual punishment. To the extent defendant may be arguing section 1170.126, subdivision (b) violates due process because it limits a defendant to the filing of a single petition and requires that, unless good cause is shown, the petition must be filed within two years after the effective date of the Act, we find no fundamental unfairness. We reach the same conclusion if we interpret defendant's argument as a claim that, because of the two-year limit, he was unfairly deprived of the opportunity to demonstrate a lengthy period of nonviolence that would have allayed the trial court's concerns. The ability to seek resentencing "is not constitutionally required, but an act of lenity on the part of the

electorate." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.)[20]  There was no due process violation.

## II

## Section 1170.18, subdivision (c), enacted pursuant to Proposition 47, does not modify section 1170.126, subdivision (f).

On November 4, 2014, voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (hereafter Proposition 47).  It went into effect the next day.  (Cal. Const., art. II, § 10, subd. (a).)  Insofar as is pertinent here, Proposition 47 renders misdemeanors certain drug- and theft-related offenses that previously were felonies or "wobblers," unless they were committed by certain ineligible defendants.  Proposition 47 also created a new resentencing provision — section 1170.18 — by which a person currently serving a felony sentence for an offense that is now a misdemeanor, may petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47.  (§ 1170.18, subd. (a).)  A person who satisfies the criteria in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor … unless the court, in its

---

[20]     We express no opinion whether an inmate could bring more than one petition, or file a petition and then seek a lengthy continuance in order to establish a prolonged period of rehabilitation, or whether the desire to establish such a period would constitute good cause for filing a petition beyond the two-year period.  The record established previous attempts to rehabilitate defendant (through, for example, a 52-week batterers' course) were woefully unsuccessful.  The evidence further suggested his current belated efforts were undertaken not for purposes of true rehabilitation, but with a view toward convincing the court to resentence him.  Moreover, his crimes were not particularly remote and his most recent offense involved violence his record amply demonstrated was not an instance of aberrant behavior.

24.

discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id*., subd. (b).)[21]

Hidden in the lengthy, fairly abstruse text of the proposed law, as presented in the official ballot pamphlet — and nowhere called to voters' attention — is the provision at issue in the present appeal. Subdivision (c) of section 1170.18 provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Section 667, subdivision (e)(2)(C)(iv) lists the following felonies, sometimes called "super strike" offenses:

"(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

---

[21] Proposition 47 also created a process whereby eligible persons who have already completed their sentences may have the particular conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

25.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The question is whether section 1170.18, subdivision (c) now limits a trial court's discretion to deny resentencing under the Act to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit a new "super strike" offense. Defendant says it does. The People disagree. We agree with the People.[22]

---

[22] We solicited supplemental briefing concerning Proposition 47. Among the questions we asked counsel to answer were whether defendant met the criteria for resentencing under section 1170.18 and, if so, whether we needed to determine the applicability, if any, of section 1170.18, subdivision (c) to resentencing proceedings under section 1170.126. We are satisfied it is appropriate for us to reach the issue of applicability regardless of whether defendant might obtain resentencing under Proposition 47.

It appears that a number of inmates will be eligible to seek resentencing under both the Act and Proposition 47. Such an inmate need not wait to file a petition under Proposition 47 until the trial court's ruling on the inmate's petition under the Act is final. A trial court is not divested of jurisdiction over a Proposition 47 petition by the fact a petition under the Act is pending, whether in a trial court or a Court of Appeal, with respect to the same inmate. (Cf. *People v. Mayfield* (1993) 5 Cal.4th 220, 222-227; *People v. Johnson* (1992) 3 Cal.4th 1183, 1256-1257; *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473.) While the general rule is that "an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court [citations]" (*Anderson v. Superior Court* (1967) 66 Cal.2d 863, 865), the subject matter of a ruling on a petition under the Act is legally independent from a petition under Proposition 47 (see *People v. Superior Court* (*Gregory*) (2005) 129 Cal.App.4th 324, 332).

In light of the differences between the two proceedings — for instance, an inmate resentenced under Proposition 47 is generally subject to one year of parole (§§ 1170.18, subd. (d), 3000.08), while an inmate resentenced under the Act is subject to up to three years of postrelease community supervision (§ 3451; *People v. Tubbs* (2014) 230 Cal.App.4th 578, 585-586, petn. for review pending, petn. filed Nov. 12, 2014; *People v. Espinoza* (2014) 226 Cal.App.4th 635, 637-638) — we express no opinion concerning whether the granting of a Proposition 47 petition would render moot resentencing proceedings, whether in a trial court or on appeal, under the Act.

"'In interpreting a voter initiative …, we apply the same principles that govern statutory construction. [Citation.]' [Citation.] "'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]'" [Citation.]" (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014.) Thus, in the case of a provision adopted by the voters, "their intent governs. [Citations.]" (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

To determine intent, "'we look first to the words themselves. [Citations.]'" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1014.) We give the statute's words "'a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute … in order to determine the scope and purpose of the provision …. [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute .…' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.]" (*People v. Acosta* (2002) 29 Cal.4th 105, 112.) We "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided.… [S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

"'""When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citation.]' [Citation.]" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.) On its face, "[a]s used throughout this Code," as employed in section 1170.18, subdivision (c), clearly and unambiguously refers to the Penal Code, not merely section 1170.18 or the other provisions contained in Proposition 47. (See *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 164-165, 166; see

27.

also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1254-1255; *People v. Vasquez* (1992) 7 Cal.App.4th 763, 766.)

This does not mean, however, that the definition contained in section 1170.18, subdivision (c) must inexorably be read into section 1170.126, subdivision (f). (Cf. *Marshall v. Pasadena Unified School Dist., supra,* 119 Cal.App.4th at p. 1255.) "The literal language of a statute does not prevail if it conflicts with the lawmakers' intent .… [Citations.]" (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1033-1034.) "'The apparent purpose of a statute will not be sacrificed to a literal construction.' [Citation.]" (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.) Rather, "the literal meaning of a statute must be in accord with its purpose." (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 927.) "[I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole .…" (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.) "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. [Citation.]" (*In re Michele D., supra,* 29 Cal.4th at p. 606; accord, *People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

Thus, "'"we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] We also '"refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]" (*People v. Osuna, supra,* 225 Cal.App.4th at p. 1034.) We consider "the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387), as well as "the wider historical circumstances" of the statute's or statutes' enactment (*ibid.*). "'Using

28.

these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Osuna, supra,* 225 Cal.App.4th at pp. 1034-1035.)

Proposition 47 and the Act address related, but not identical, subjects. As we explain, reading them together, and considering section 1170.18, subdivision (c) in the context of the statutory framework as a whole (see *People v. Acosta*, *supra*, 29 Cal.4th at p. 112; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 781), we conclude its literal meaning does not comport with the purpose of the Act, and applying it to resentencing proceedings under the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures (see *People v. Disibio* (1992) 7 Cal.App.4th Supp. 1, 5).

As is evidenced by its title, the Act was aimed solely at revising the three strikes law. That law, as originally enacted by the Legislature, was described by us as follows:

> "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.] The primary goals of recidivist statutes are: '… to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' [Citation.]

29.

"By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.'" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823-824.)[23]

A few months before the November 6, 2012, election, the California Supreme Court observed: "One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when … a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]" (*In re Coley* (2012) 55 Cal.4th 524, 528-529.)

Clearly, by approving the Act, voters resolved this controversy in favor of strike offenders. Thus, one of the "Findings and Declarations" of the Act stated the Act would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of proposed law, § 1, p. 105.) Nowhere, however, do the ballot materials for the Act suggest voters intended essentially to open the prison doors to existing third strike offenders in all but the most egregious cases, as would be the result if the definition of "'unreasonable risk of danger to public

---

**23** The foregoing applies equally to the three strikes initiative measure that added section 1170.12 to the Penal Code. The following statement of intent preceded the text of the statute in Proposition 184, which was approved by voters on November 8, 1994: "'It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.'" (See Historical and Statutory Notes, 50C West's Ann. Pen. Code (2004 ed.) foll. § 1170.12, p. 239.)

safety'" contained in section 1170.18, subdivision (c) were engrafted onto resentencing proceedings under section 1170.126, subdivision (f). That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remains mandatory under the Act for a wide range of current offenses even if the offender does not have a prior conviction for a "super strike" offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and that an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (§ 1170.126, subd. (e)(2)).

The Act clearly placed public safety above the cost savings likely to accrue as a result of its enactment. Thus, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of the health, safety, and welfare of the people of the State of California*, and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), *supra*, text of proposed law, p. 110, original italics omitted, italics added.) As we explained in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 — while titled "the Safe Neighborhoods and Schools Act" — emphasized monetary savings. The "Findings and Declarations" state: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of proposed law, § 2, p. 70.) Uncodified section 15 of the measure provides: "This act

31.

shall be broadly construed to accomplish its purposes," while uncodified section 18 states: "This act shall be liberally construed to effectuate its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, text of proposed law, p. 74.) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).) Section 1170.18 renders ineligible for resentencing *only* those inmates whose current offense would now be a misdemeanor, but who have a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be misdemeanors rather than felonies, had any impact on the Act, which dealt with offenders whose current convictions *would still be felonies*, albeit not third strikes. For instance, the Official Title and Summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds unreasonable public safety risk." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, official title and summary, p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes*. This measure also allows certain offenders *who have been previously convicted of such crimes* to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) With respect to the resentencing provision, the Legislative Analyst explained:

"This measure allows offenders *currently serving felony sentences for the above crimes*[, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences. In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor. However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement." (*Id*. at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the Act. The Argument in Favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument in favor of Prop. 47, p. 38.) The Rebuttal to Argument Against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the Act. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument against Prop. 47, p. 39.) Although the Rebuttal to Argument in Favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had prior convictions "for serious crimes, such as assault, robbery and home burglary" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions would extend to inmates whose current offenses remained felonies under the Act. The same is true of the discussion of resentencing contained in the Argument Against

Proposition 47.  (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument against Prop. 47, p. 39.)

In light of the foregoing, we cannot reasonably conclude voters intended the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code .…"  Voters cannot intend something of which they are unaware.

We are cognizant one of the Act's authors has taken the position Proposition 47's definition of "unreasonable risk of danger" applies to resentencing proceedings under the Act.  (St. John & Gerber, *Prop. 47 Jolts Landscape of California Justice System* (Nov. 5, 2014) Los Angeles Times <http://www.latimes.com/local/politics/la-me-ff-pol-proposition47-20141106-story.html> [as of Dec. 16, 2014].)  Looking at the information conveyed to voters, however, this clearly was not *their* intent and so an author's desire is of no import.  (Cf. *People v. Garcia* (2002) 28 Cal.4th 1166, 1175-1176, fn. 5; *People v. Bradley* (2012) 208 Cal.App.4th 64, 83; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

We are also mindful "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation].  'This principle applies to legislation enacted by initiative.  [Citation.]'  [Citation.]" (*People v. Superior Court* (*Cervantes*)*, supra,* 225 Cal.App.4th at p. 1015; accord, *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.)  Thus, we presume voters were aware "unreasonable risk of danger to public safety," as used in section 1170.126, subdivision (f), had been judicially construed as not being impermissibly vague, but as nevertheless having no fixed definition.  (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769-770, petn. for review pending, petn. filed Nov. 18, 2014; *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075.)  Because nowhere in the ballot materials for Proposition 47

was it called to voters' attention the definition of the phrase contained in section 1170.18, subdivision (c) would apply to resentencing proceedings under the Act, we simply cannot conclude voters intended Proposition 47 to alter the Act in that respect. Voters are not asked or presumed to be able to discern all potential effects of a proposed initiative measure; this is why they are provided with voter information guides containing not only the actual text of such a measure, but also a neutral explanation and analysis by the Legislative Analyst and arguments in support of and in opposition to the measure. As we have already observed, none of those materials so much as hinted that Proposition 47 could have the slightest effect on resentencing under the Act. (Cf. *Marshall v. Pasadena Unified School Dist., supra,* 119 Cal.App.4th at pp. 1255-1256 [legislative history of enactment included information bill would add definition of particular term to Public Contract Code].)[24]

We are asked to infer an intent to extend section 1170.18, subdivision (c)'s definition to proceedings under section 1170.126 because the phrase in question only appears in those sections of the Penal Code. We cannot do so. The only resentencing mentioned in the Proposition 47 ballot materials was resentencing for inmates whose current offenses would be reduced to *misdemeanors*, not those who would still warrant *second strike felony terms*. There is a huge difference, both legally and in public safety risked, between someone with multiple prior serious and/or violent felony convictions whose current offense is (or would be, if committed today) a misdemeanor, and someone whose current offense is a felony. Accordingly, treating the two groups differently for resentencing purposes does not lead to absurd results, but rather is eminently logical.

---

[24] For the same reasons, we reject any suggestion the definition contained in section 1170.18, subdivision (c) was intended to clarify the true meaning of "unreasonable risk of danger to public safety" as used in section 1170.126, subdivision (f). (Cf. *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1511; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1238.)

35.

We recognize "[i]t is an established rule of statutory construction … that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings. [Citations.]" (*People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 & disapproved on another ground in *People v. Escobar* (1992) 3 Cal.4th 740, 749-751 & fn. 5; see *Robbins v. Omnibus R. Co.* (1867) 32 Cal. 472, 474.) We question whether Proposition 47 and the Act are truly in pari materia: That phrase means "[o]n the same subject; relating to the same matter" (Black's Law Dict. (9th ed. 2009) p. 862), and the two measures (albeit with some overlap) address different levels of offenses and offenders. In any event, "canons of statutory construction are merely aids to ascertaining probable legislative intent" (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10); they are "mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined [citation]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1391).

The Act was intended to reform the three strikes law while keeping intact that scheme's core commitment to public safety. Allowing trial courts broad discretion to determine whether resentencing an eligible petitioner under the Act "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) clearly furthers the Act's purpose. Whatever the wisdom of Proposition 47's policy of near-universal resentencing where *misdemeanants* are concerned — and "[i]t is not for us to gainsay the wisdom of this legislative choice" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 813) — constraining that discretion so that all but the worst *felony* offenders are released manifestly does not, nor does it comport with voters' intent in enacting either measure.

Accordingly, Proposition 47 has no effect on defendant's petition for resentencing under the Act. Defendant is not entitled to a remand so the trial court can redetermine defendant's entitlement to resentencing under the Act utilizing the definition of

36.

"'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c).**25**

## DISPOSITION

The judgment is affirmed.

_____

DETJEN, J.

I CONCUR:

_____

LEVY, Acting P.J.

---

**25**      Recently, the Third District Court of Appeal held section 1170.18, subdivision (c)'s definition of "'unreasonable risk of danger to public safety'" does not apply retroactively to defendants whose petitions for resentencing under the Act were decided before the effective date of Proposition 47. (*People v. Chaney* (Dec. 1, 2014, C073949) ___ Cal.App.4th ___, ___-___ [2014 D.A.R. 15934, 15935-15936].) *Chaney* did not decide whether Proposition 47's definition applies prospectively to such petitions. (*Chaney, supra,* at p. ___, fn. 3 [2014 D.A.R. 15934, 15936, fn. 3].) Were we to conclude section 1170.18, subdivision (c) modifies section 1170.126, subdivision (f), we would agree with *Chaney* that it does not do so retroactively. We believe, however, that a finding of nonretroactivity inexorably leads to the possibility of prospective-only application, and that prospective-only application of Proposition 47's definition to resentencing petitions under the Act would raise serious, perhaps insurmountable, equal protection issues. "Mindful of the serious constitutional questions that might arise were we to accept a literal construction of the statutory language, and of our obligation wherever possible both to carry out the intent of the electorate and to construe statutes so as to preserve their constitutionality [citations]" (*People v. Skinner* (1985) 39 Cal.3d 765, 769), we rest our holding on the reasoning set out in our opinion, *ante*.

PEÑA, J.,

I concur in the judgment and the majority opinion with the exception of part II.  I agree defendant may not take advantage of Proposition 47's[1] newly enacted definition of "unreasonable risk of danger to public safety," as provided in Penal Code section 1170.18, subdivision (c) (1170.18(c)).  I do so not because there is any ambiguity in the language used in section 1170.18(c) or the notion that the statute does not mean what it says, i.e., that the new definition applies "throughout this Code."  Rather, in my view, there is no indication the electorate, in enacting section 1170.18(c), intended it to apply retroactively to resentencing determinations under Proposition 36, the Three Strikes Reform Act of 2012 (the Act).

**I.**     **After November 4, 2014, the definition of "unreasonable risk of danger" in Section 1170.18(c) applies throughout the Penal Code**

Section 1170.18(c) provides:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

This section and subdivision were enacted on November 4, 2014, when California voters passed Proposition 47, long past the time of defendant's resentencing hearing.  Unless the legislation was designed or intended to apply retroactively, the definition in section 1170.18(c) cannot apply to defendant.  This is the only inquiry we must make to resolve the issue of whether the definition in section 1170.18(c) applies to defendant.  However, the majority has opted to determine whether the new definition applies to any resentencing provisions under the Act, past, present, or future.  I respectfully disagree with the majority's analysis and conclusion on this broader issue.

---

[1]The Safe Neighborhood and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)).

"'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211-212.)

Where the statutory language is so clear and unambiguous, there is no need for statutory construction or to resort to legislative materials or other outside sources. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371.) Absent ambiguity, it is presumed the voters intend the meaning apparent on the face of an initiative measure, and the courts may not add to the statute or rewrite it to conform to a presumed intent not apparent in its language. (*People v. ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

In determining whether the words enacted here are unambiguous, we do not write on a blank slate. For example, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1255, the court stated there "is nothing ambiguous about the phrase 'as used in this code.'" It held the definition of "Emergency, as used in this code" applied to the entire Public Contract Code, and it was not limited to a particular chapter, article, or division of that code. Also, in *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 166, the court held: "The words 'as in this code provided' (Penal Code, § 182) refer to the Penal Code."

In a similar vein, the court in *People v. Leal* (2004) 33 Cal.4th 999, 1007-1008, applied the plain meaning rule as follows:

2.

"The statutory language of the provision defining 'duress' in each of the rape statutes is clear and unambiguous. The definition of 'duress' in both the rape and spousal rape statutes begins with the phrase, 'As used in this section, "duress" means ….' (§§ 261, subd. (b), 262, subd. (c).) This clear language belies any legislative intent to apply the definitions of 'duress' in the rape and spousal rape statutes to any other sexual offenses.

"Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of 'duress' that already was in use for other sexual offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of 'duress' in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term 'duress.' Defendant observes: 'The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of "duress" to apply only to rape so that it would have one meaning when the rape statutes use the phrase "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape.'

"But the Legislature was not required to set forth its reasons for providing a different definition of 'duress' for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so. 'When "'statutory language is … clear and unambiguous there is no need for construction, and courts should not indulge in it.'" [Citations.] The plain meaning of words in a statute may be disregarded only when that meaning is "'repugnant to the general purview of the act,' or for some other compelling reason …." [Citations.]' [Citation.] As we said in an analogous situation: 'It is our task to construe, not to amend, the statute. "In the construction of a statute … the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted …." [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]"

The majority pays lip service to the plain meaning rule and then ignores it. While acknowledging the language used is unambiguous, it nonetheless engages in statutory construction to determine whether the electorate really intended to say what it actually enacted. The end result is a rewriting of the statute so that it comports with the majority's

3.

view of what the voters really intended. The majority has rewritten section 1170.18(c) so that it now states: "*As used in this section only*, 'unreasonable risk of danger to public safety' means …." The majority does so without providing a compelling reason to do so and without showing the plain language used has a "'meaning [that] is "'repugnant to the general purview of the act.'"'" (*People v. Leal*, *supra*, 33 Cal.4th at p. 1008.) Because the Act had not previously defined the phrase "unreasonable risk of danger to public safety," the definition in section 1170.18(c) cannot be repugnant or contradictory to the Act, nor does the majority claim the definition is repugnant to the general purview of Proposition 47. For these reasons, I respectfully disagree with the majority on this part of the opinion.

## II.     Section 1170.18(c) has no application to defendant's resentencing under the Act

I do concur in the result because there is nothing in Proposition 47 to indicate the definition enacted under section 1170.18(c) is to be applied retroactively to defendant under the Act.

I begin my analysis with section 3 of the Penal Code, which provides that "[n]o part of it is retroactive, unless expressly so declared." "Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear," section 3 provides the default rule. (*People v. Brown* (2012) 54 Cal.4th 314, 319.) Proposition 47 is silent on the question of whether it applies retroactively to proceedings under the Act. The analysis of Proposition 47 by the legislative analyst and the arguments for and against Proposition 47 are also silent on this question. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) pp. 34-39.) Because the statute contains no express declaration that section 1170.18(c) applies retroactively to proceedings under the Act, and there is no clearly implied intent of retroactivity in the legislative history, the default rule applies.

4.

Defendant relies on *People v. Sandoval* (2007) 41 Cal.4th 825 to support his position the new definition should be applied retroactively to cases like his, which are currently pending appeal from a denial of resentencing under the Act. However, the *Sandoval* case presented much different considerations from those present here. There, the court granted review for the following reasons:

> "[T]o determine whether defendant's Sixth Amendment rights as defined in *Cunningham v. California* (2007) 549 U.S. 270 … were violated by the imposition of an upper term sentence and, if so, the remedy to which [he or] she is entitled. In *Cunningham*, the United States Supreme Court disagreed with this court's decision in *People v. Black* (2005) 35 Cal.4th 1238 … and held that California's determinate sentencing law … violates a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by assigning to the trial judge, rather than to the jury, the authority to find the facts that render a defendant eligible for an upper term sentence. We conclude that defendant's Sixth Amendment right to a jury trial was violated and, although harmless error analysis applies to such violations, the error in the present case was not harmless beyond a reasonable doubt and the case must be remanded for resentencing. For the reasons explained below, we also conclude that upon remand, the trial court may exercise its discretion to impose any of the three terms available for defendant's offense." (*People v. Sandoval*, *supra*, 41 Cal.4th at pp. 831-832.)

In the interim between *People v. Black*, *supra*, 35 Cal.4th 1238 and *People v. Sandoval*, *supra*, 41 Cal.4th 825, the Legislature amended the determinate sentencing law to cure its constitutional defect as found in *Cunningham v. California*, *supra*, 549 U.S. 270. Although the Legislature failed to provide for retroactive application, the *Sandoval* court decided it was responsible for fashioning "a constitutional procedure for resentencing in cases in which *Cunningham* requires a reversal of an upper term sentence." (*People v. Sandoval*, *supra*, at p. 846.) The court explained:

> "If we assume that the new legislation does not apply directly to cases pending on appeal that are remanded for resentencing, our task in deciding the appropriate sentencing procedure to be applied by a trial court on remand is somewhat analogous to what we faced in *In re Hawthorne* [(2005)] 35 Cal.4th 40. There, the Legislature enacted a statute intended to

implement the United States Supreme Court's decision in *Atkins v. Virginia* (2002) 536 U.S. 304, which held that the federal Constitution prohibits execution of the mentally retarded.  (See *In re Hawthorne*, *supra*, 35 Cal.4th at p. 44.)  The legislation, however, did not provide for cases in which the death penalty already had been imposed.  (*In re Hawthorne*, *supra*, 35 Cal.4th at p. 45.)  In such a situation, '[t]he task thus falls to this court to formulate appropriate procedures for resolving postconviction claims.'  (*Ibid*.)

> "In *Hawthorne*, we adopted procedures for postconviction claims that tracked the statute 'as closely as logic and practicality permit,' in order 'to maintain consistency with our own [state's] legislation … and to avoid due process and equal protection implications.'  (*In re Hawthorne*, *supra*, 35 Cal.4th at p. 47.)  Likewise, in the present case, we direct that sentencing proceedings to be held in cases that are remanded because the sentence imposed was determined to be erroneous under *Cunningham*, *supra*, 549 U.S. 270, are to be conducted in a manner consistent with the amendments to the [determinate sentencing law] adopted by the Legislature." (*People v. Sandoval*, *supra*, 41 Cal.4th at p. 846.)

In this case, there is no constitutional violation in the manner the trial court conducted its sentencing determination.  Thus, there is no occasion to remand this case, and we instead affirm the trial court's determination.  Defendant has identified no due process or equal protection concerns that might invalidate Proposition 47 or the Act if he is denied retroactive application.[2]  I perceive none.

Although defendant has not relied upon *In re Estrada* (1965) 63 Cal.2d 740 to argue retroactive application, the People have cited it as distinguishable from this case.  I discuss the *Estrada* case out of an abundance of caution.

In *Estrada*, the court stated:

> "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now

---

[2]Defendant did not raise any due process or equal protection arguments relating to the retroactivity issue in his supplemental briefing.

deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*In re Estrada*, *supra*, 63 Cal.2d at p. 745.)

One may argue that under the *Estrada* case, unless there is a "savings clause" providing for prospective application, a statute lessening punishment is presumed to apply to all cases not yet reduced to a final judgment on the statute's effective date. (*In re Estrada*, *supra*, 63 Cal.2d at pp. 744-745, 747-748.) However, the *Estrada* case has been revisited by our Supreme Court on several occasions. In *People v. Brown*, *supra*, 54 Cal.4th at page 324 the court stated: "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." "The holding in *Estrada* was founded on the premise that "'[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.'"" (*Id.* at p. 325.) In *Brown*, the court did not apply the *Estrada* rule because "a statute increasing the rate at which prisoners may earn credits for good behavior does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent." (*People v. Brown*, *supra*, at p. 325.)

Similarly here, *Estrada* does not control because applying the definition of "unreasonable risk to public safety" in Proposition 47 to petitions for resentencing under the Act does not reduce punishment for a particular crime. Instead, the downward modification of a sentence authorized by the Act is dependent not just on the current

7.

offense but on any number of unlimited factors related to the individual offender, including criminal conviction history, disciplinary and rehabilitation records, and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (g)(3).)

Because section 1170.18(c)'s definition of "unreasonable risk of danger to public safety" does not apply retroactively to the Act, the sentencing court applied the correct standard in exercising its discretion to not resentence defendant.[3] Since defendant has failed to show an abuse of that discretion, I concur in the majority's affirmance of the judgment.

_____
PEÑA, J.

---

[3]Recently in *People v. Chaney* (Oct. 29, 2014 C073949) __ Cal.App.4th __ the Third District Court of Appeal held the definition of "unreasonable risk of danger to public safety" as provided in section 1170.18(c) does not apply retroactively. I agree.